UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FAYE A. RULE,

    Plaintiff,

v.                                                                                                 Case No. 2:06-cv-175

COMMISSIONER OF SOCIAL SECURITY,                HON. GORDON J. QUIST

    Defendant.
_____/

## **OPINION**

    Plaintiff Faye A. Rule was born on December 7, 1961, and worked as a nurse's aide for many years. See Transcript of Administrative Hearing at pages 43, 47-49, 193 (hereinafter Tr. at ___). According to Plaintiff, she became unable to work in December of 2001, as a result of fibromyalgia, depression and arthritis. Tr. at 183. Plaintiff filed an application for social security disability benefits on November 19, 2002. Tr. at 43-44. Plaintiff's application was denied initially on March 12-13, 2003. Tr. at 28-33. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Tr. at 34. A hearing was held on April 18, 2005, at which Plaintiff, her husband, an adult daughter and her eighteen year old son all testified. Tr. at 199-215. On October 27, 2005, the ALJ issued a decision finding Plaintiff not disabled as that term is defined in the Social Security Act because she could perform a significant number of light jobs. Tr. at 12-18. Plaintiff thereafter filed a request for a review of the ALJ's decision with the Appeals Council. Tr. at 8. In support of this appeal, Plaintiff submitted a four page letter, in her handwriting. Tr. at 174-177. The Appeals Council denied Plaintiff's request for a review on April 14, 2006. Therefore, the ALJ's decision

became the final decision of the Commissioner. Plaintiff has filed a petition in this Court, seeking an award of disability benefits.

During the hearing, Plaintiff's representative asked the ALJ to hold the record open so that he could obtain updated medical records from at least two of Plaintiff's medical providers. The ALJ granted this request. Tr. at 180-181. Plaintiff testified that she last worked in December of 2001, because she had developed memory problems and progressive weakness, which prevented her from adequately performing her job duties. Tr. at 182-183. Plaintiff then sought treatment and was diagnosed as having fibromyalgia, depression and arthritis. Plaintiff testified that she was being treated with Prozac for the depression, and with anti-inflammatory drugs and pain pills for her physical symptoms. Plaintiff stated that the pain pills took "the edge off," but that she had difficulty sitting and standing for long periods of time, and that she doubted if she could sit on a hard chair for longer than 20 to 30 minutes. Plaintiff indicated she could lift a five pound bag of sugar, but that anything heavier was a problem. Tr. at 183-184. Plaintiff stated that an orthopedic surgeon had diagnosed her as having severe arthritis in her right knee and had recommended surgery. However, Plaintiff stated that she did not have the surgery because of her lack of health insurance. Tr. at 184.

Plaintiff testified that on a typical day, she takes her pills first thing in the morning and waits for them to start working before getting washed and dressed. Plaintiff stated that if she is having a good day, she is able to clean one room at a time, resting in between. Plaintiff stated that if she is having a bad day, which occurs approximately three days each week, she is unable to engage in much activity at all. Tr. at 184-185, 197-198. Plaintiff enjoys knitting, but has difficulty knitting because of pain in her right hand and arms. Plaintiff is able to ride an exercise bike or swim for exercise, but cannot walk for any distance because of her knee problems. Plaintiff stated that on a

bad day, she aches everywhere, takes more pain pills that she would like and cries a lot out of frustration for not being able to do the things she used to be able to do.  Tr. at 185-186, 199.

Plaintiff testified that she was taking a medication called Humatrope, which is a daily injectable medication to treat her memory problems and aching, but that she had to give up the shots because she could not afford them.  Plaintiff stated that her pituitary gland had atrophied, causing the fibromyalgia and memory problems.  Tr. at 186-187.  Plaintiff also testified that she has pain and lumps in her right knee and wrist, and beginning in her left knee as a result of arthritis, and that she is taking Celebrex to treat this condition.  Plaintiff is also taking Synthroid to treat her hypothydroidism, and Darvocet and Ultram to treat her pain.  Tr. at 187-190.  Plaintiff stated that she also takes Prilosec and Maalox daily for acid reflux, as well as Dyazide for high blood pressure.  Tr. at 190-192.  Plaintiff also experiences pain in her left foot from fasciitis and pain in her right shoulder, which greatly limits her range of motion.  Tr. at 196-197.

Plaintiff testified that her job as a nurse's aide required her to lift patients.  Plaintiff stated that the people who tested her felt that she could lift 10 pounds regularly and 20 pounds occasionally, which is less than she would be required to do as a nurse's aide.  Tr. at 192-194.  Plaintiff indicated that she could not use a computer because the lump in her right hand causes pain after using the mouse for 10 to 15 minutes.  Plaintiff also stated that she did not think she could make change or handle money because her thought processes were not clear.  Plaintiff indicated that she had made many mistakes in her own checkbook as a result of her memory problems, and that her husband took care of it now.  Tr. at 194-196.

Plaintiff's husband, Richard Rule, testified that when he and Plaintiff were first married, Plaintiff was quite active and was always busy.  Richard stated that Plaintiff currently has difficulty doing basic housework and that her memory is failing.  Tr. at 201.  Richard has noticed

his wife dropping things such as plates and glasses approximately every day. Tr. at 202. Richard testified that his wife had to quit her job because she was increasingly suffering from pain and fatigue, which prevented her from performing her job duties. Richard observed that Plaintiff suffers from sudden mood swings and that he has seen her crying approximately twice a week for the past year. Tr. at 203-204. Richard stated that Plaintiff has to be reminded to take her medication on a daily basis and that she could not be trusted to run a cash register. Richard testified that the drive to the hearing, approximately 100 miles, was hard on Plaintiff and that she would be in a lot of pain later. Tr. at 205.

Plaintiff's daughter, Tammy Rule, testified that Plaintiff had approximately two or three days each week when she could not get out of bed and that Plaintiff was unable to complete even small chores such as washing the dishes. Tr. at 208-209. Plaintiff's son, Richard Rule, testified that Plaintiff had become much weaker over the past three years and that she was unable to do basic housekeeping or yard work. Plaintiff's son also stated that Plaintiff could go into a store and walk around for ten or fifteen minutes, but then she would have to sit down because of pain. Tr. at 211-214.

Plaintiff had a normal chest x-ray on August 28, 2001. Tr. at 146. A treatment note by Thomas M. McConnon, M.D., dated May 15, 2002, stated that Plaintiff's arthritis had improved with the use of Prednisone. Tr. at 131. The state agency reviewing physician, Daniel Dolanski, D.O., examined Plaintiff and noted that Plaintiff had been diagnosed with defuse inflammatory arthralgias, Grave's Disease, osteoarthritis, and sero-negative rheumatoid arthritis. Tr. at 106. Dr. Dolanski opined that Plaintiff could lift up to twenty pounds occasionally and up to ten pounds on a more frequent basis. In addition, Dr. Dolanski stated that Plaintiff could stand and sit for approximately six hours in an eight hour day, and that she was able to push or pull without difficulty.

Tr. at 108. Dr. Dolanski noted Plaintiff's subjective complaints that pain in her knees kept her from walking more than one-hundred feet and that hand pain affected her daily activities. He also observed that Plaintiff's reports about her activities of daily living indicated that she drove on a daily basis, shopped, cooked, and performed light housekeeping chores, and that she could occasionally knit and care for children. Dr. Dolanski concluded that Plaintiff's subjective complaints were "partially credible." Tr. at 112-113.

Plaintiff was seen by Barbara Halazon, M.A., LLP, for a psychiatric / psychological medical examination and report, who concluded that Plaintiff had no history of psychological or psychiatric intervention services except for medication for depression. Tr. at 166.

Section 405(g) of Title 42 of the United States Code provides that the Commissioner's findings are conclusive so long as they are supported by substantial evidence. This Court's review is limited to determining whether or not there is substantial evidence in the record to support the findings of the Commissioner. *See Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 851 (6th Cir. 1986). Substantial evidence has been defined as more than a mere scintilla and must include such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981). In addition, this Court must defer to the Commissioner's decision even if there is substantial evidence in the record to support an opposite conclusion. *See Key v. Callahan*, 109 F.3d 270, 273 (1997). I am not to resolve conflicts in the record or examine the credibility of Plaintiff's testimony. *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). This Court must affirm the ALJ's decision, unless the ALJ applied an incorrect legal standard or made findings of fact which are not supported by substantial evidence in the record. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ is required to follow a five-step sequential analysis in determining whether an individual is entitled to disability benefits. The party claiming benefits bears the burden of proof through the first four steps to prove his entitlement to disability benefits. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Secretary of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994). The five step sequential analysis is as follows:

> 1.   If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.   Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

It was at the fifth step that the ALJ concluded that Plaintiff was not entitled to disability benefits. Thus, the question presented to this Court is whether or not there is substantial evidence to find that the Commissioner met the burden of proving that Plaintiff is not entitled to disability benefits.

Plaintiff maintains that there is not substantial evidence to support the finding of the Commissioner that she is capable of performing a significant number of light jobs which exist in the economy. Specifically, Plaintiff maintains that it was error to find that Plaintiff's testimony was

-6-

exaggerated. According to Plaintiff, if the Commissioner had accepted her testimony, a finding of disabled was mandated. A review of the medical evidence of record supports the finding of the Commissioner regarding the lack of credibility for Plaintiff's testimony. Many of Plaintiff's complaints are subjective and are not supported by medical findings of treating or examining physicians. There is ample evidence in the record to support the findings of the Commissioner regarding Plaintiff's ability to perform a substantial number of light duty jobs which exist in the national economy.

> In *Rogers v. Commissioner*, 225 F.3d 659 (6th Cir. 2000), the court explained:
>
> A number of other circuits had concluded that when an individual has significant non exertional impairments that themselves restrict the individual's range of employment, an ALJ typically must consult a vocational expert, and cannot rely solely on the Medical-Vocational Guidelines (often referred to simply as "the grids") set forth in the Code of Federal Regulations when determining whether and to what extent the individual can work. *See, e.g., Ortiz v. Sec'y of Health & Human Svcs.*, 890 F.3d 520, 524 (1st Cir. 1989); *Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988); *see also Smith v. Schweiker*, 735 F.2d 267, 272 n. 4 (7th Cir. 1984) (holding that the grids may be used as "guidance for decisionmaking," even when they do not, by their own terms, apply); *Kirk v. Sec'y of Health & Human Svcs.*, 667 F.2d 524, 535 (6th Cir. 1981) (same). The Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, do not directly apply in this case because they do not take into account nonexertional limitations.

The Court ordered that supplemental briefs be filed on the issue of whether or not the Commissioner was required to call a vocational expert to testify in this matter. Defendant was ordered to file its brief by August 29, 2007, with the Plaintiff's response by September 14, 2007. Defendant filed a brief as ordered by the Court. Plaintiff did not file a response. In this case, the Commissioner used the Medical-Vocational Guidelines as a framework for evaluating a combination of exertional and nonexertional impairments. The Commissioner maintains that Social

Security Ruling (SSR) 83-14 provides that the ALJ may determine whether an impaired person can meet the primary strength requirements of sedentary light or medium work and a further decision as to what jobs the claimant is capable of performing. In the instant case, the ALJ limited Plaintiff's ability to perform light work, indicating that she could not climb ladders, ropes, scaffolds, ramps or stairs and that she was also limited in her ability to balance, stoop, kneel, crouch and crawl. According to SSR 83-14, few jobs in the national economy require use of ladders and scaffolding. Moreover, the regulation indicates that few light jobs require an individual to crouch or stoop. SSR 83-14 indicates that a "particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. Such a person, then, would come very close to meeting a grid rule that directs a conclusion of not disabled."

Based on the facts of record, the Court concludes that it was not necessary to call a vocational expert in this case and that there is substantial evidence to support the findings of the Commissioner that Plaintiff is not disabled. Accordingly, the Court will affirm the decision of the Commissioner denying Plaintiff's request for disability benefits.


Dated:  September 28, 2007                             /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE